UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LESBIA JESENIA LEIVA FLORES, <br><br> Plaintiff, <br><br> v. <br><br> SERGIO ALBARRAN, et al., <br><br> Defendants. | Case No. 25-cv-09302-AMO <br><br> **ORDER GRANTING TEMPORARY RESTRAINING ORDER; ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION** <br><br> Docket No. 3 |

Before the Court is Petitioner Lesbia Jesenia Leiva Flores's Motion for Temporary Restraining Order. TRO Mot., Dkt. No. 3. On October 29, 2025, Petitioner filed a Petition for Writ of Habeas Corpus, and a Motion for Temporary Restraining Order, against Field Office Director of the San Francisco Immigration and Customs Enforcement Office Sergio Albarran, Acting Director of United States Immigration and Customs Enforcement Todd Lyons, Secretary of the Department of Homeland Security Kristi Noem, and United States Attorney General Pamela Bondi. Dkt. Nos. 1, 3. Petitioner asks this Court to (1) order her immediate release from Respondents' custody pending these proceedings, and (2) enjoin Respondents from transferring her out of this District or deporting her during the pendency of the underlying proceedings. *See* Dkt. No. 3. For the foregoing reasons, the TRO is GRANTED as modified below.

### I. BACKGROUND

According to the record before the Court, Petitioner is an asylum seeker from Nicaragua. Pet. for Writ of Habeas Corpus ("Pet.") ¶ 1, Dkt. No. 1. She entered the United States in July 2021 and was paroled because DHS determined "she posed little if any flight risk or danger to the community." *Id.* ¶ 51. DHS instructed Petitioner to attend ICE check-ins on an annual or semiannual basis, which she consistently did. *Id.* Petitioner has no criminal history anywhere in

the world. *Id.*

Petitioner was never placed in removal proceedings. *Id.* Petitioner affirmatively applied for asylum before the United States Citizenship and Immigration Service ("USCIS") Asylum Office. *Id.* On June 12, 2025, Petitioner received a "Notice of Dismissal of Form I-589" indicating that USCIS was dismissing her asylum application because she had been placed in expedited removal proceedings. *Id.* ¶ 4. On October 28, 2025, Petitioner reported for a scheduled ICE check-in and was detained. *Id.* ¶ 3. Petitioner is currently being detained at 630 Sansome Street in San Francisco, California. *Id.* ¶ 10.

On October 29, 2025, this Petition was filed. The same day, Petitioner's counsel provided notice of the Petition and a forthcoming motion for a TRO, along with a copy of the Petition, to Respondents' counsel. Decl. of Kate Lewis ¶¶ 5-6, Dkt. No. 3-2. Later that day, counsel filed the motion for the TRO and sent a copy to Respondents' counsel. *Id.* ¶ 6. In the motion, Petitioner contends that her arrest and detention violate the Due Process Clause of the Fifth Amendment, both substantively (because Respondents allegedly have no valid interest in detaining her) and procedurally (because she was not provided with a pre-detention bond hearing).

**II.     DISCUSSION**

Petitioner now moves for a TRO. Dkt. No. 3.

**A. Legal Standard**

The standard for issuing a temporary restraining order is substantially identical to the standard for issuing a preliminary injunction. *Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017). Thus, a party seeking a temporary restraining order must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008). "[I]f a plaintiff can only show that there are serious questions going to the merits – a lesser showing than likelihood of success on the merits – then a preliminary injunction may still issue if the balance of hardships tips *sharply* in the plaintiff's favor, and the other two *Winter* factors are satisfied." *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (internal

quotation marks and citations omitted). "[W]hen the Government is the opposing party," the final two factors "merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

An injunction is a matter of equitable discretion and is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. A "TRO 'should be restricted to . . . preserving the status quo and preventing irreparable harm just so long as is necessary to hold a [preliminary injunction] hearing, and no longer.'" *E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 779 (9th Cir. 2018) (quoting *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439 (1974)).

### B. Analysis

Petitioner has demonstrated a likelihood of success on the merits of her claim that her ongoing detention violates her procedural due process rights under the Fifth Amendment. Petitioner has a substantial interest in remaining out of custody, and the Due Process Clause entitles Petitioner to a bond hearing before an immigration judge prior to any arrest or detention. *Pinchi v. Noem*, --- F. Supp. 3d ----, No. 25-cv-05632-PCP, 2025 WL 2084921, at *2-6 (N.D. Cal. July 24, 2025) (applying the three-part test established in *Mathews v. Eldridge*, 424 U.S. 319 (1976) to similar circumstances); *see also Pablo Sequen v. Kaiser*, --- F. Supp. 3d ----, No. 25-cv-06487-PCP, 2025 WL 2203419, at *2 (N.D. Cal. Aug. 1, 2025) (collecting cases).

Petitioner has also demonstrated a likelihood of irreparable injury in the absence of temporary relief. The likely unconstitutional deprivation of liberty that Petitioner faces is an immediate and irreparable harm. "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)); *see also Warsoldier v. Woodford*, 418 F.3d 989, 1001-02 (9th Cir. 2005). "[I]t follows inexorably from [the] conclusion" that Petitioner's detention without a hearing is "likely unconstitutional" that she has "also carried [her] burden as to irreparable harm." *Hernandez*, 872 F.3d at 995.

The final two *Winter* factors, the balance of the equities and public interest, also weigh heavily in favor of granting temporary relief. "[T]he public has a strong interest in upholding

procedural protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Jorge M. F. v. Wilkinson*, No. 21-cv-01434-JST, 2021 WL 783561, at *3 (N.D. Cal. Mar. 1, 2021) (cleaned up); *see Melendres*, 695 F.3d at 1002 ("[I]t is always in the public interest to prevent the violation of a party's constitutional rights." (quotation omitted)); *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005) ("Generally, public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution."). As other courts in this district and others have concluded under similar circumstances, "the potential harm to [Petitioner] is significant, while the potential harm to the government is minimal." *Pablo Sequen*, 2025 WL 2203419, at *3. At most, the government faces a short delay in detaining Petitioner if it ultimately demonstrates, by clear and convincing evidence, that her detention is necessary to prevent danger to the community or flight. *See Jorge M. F.*, 2021 WL 783561, at *3; *Diaz v. Kaiser*, No. 25-cv-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025). The government is not "harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983). Faced with "a conflict between [administrative] concerns and preventable human suffering, [the Court has] little difficulty concluding that the balance of hardships tips decidedly in [Petitioner's] favor." *Hernandez*, 872 F.3d at 996) (quoting *Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir. 1983)).

A TRO immediately releasing Petitioner is appropriate to return her to the status quo. *E. Bay Sanctuary Covenant*, 932 F.3d at 779. The status quo refers to "the last uncontested status which preceded the pending controversy." *Doe v. Noem*, 778 F. Supp. 3d 1151, 1166 (W.D. Wash. 2025) (quoting *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000)). That is the moment prior to Petitioner's likely illegal detention. *See Kuzmenko v. Phillips*, No. 25-cv-00663, 2025 WL 779743, at *2 (E.D. Cal. Mar. 10, 2025) (granting a temporary restraining order requiring immediate release of the petitioner back to home confinement from custody, as a restoration of the status quo).

Because Petitioner satisfies all requirements for temporary injunctive relief and such relief is necessary to restore the status quo, the TRO Motion is granted as detailed below. This Order

accords with many other recent grants of temporary relief in similar circumstances. *See, e.g.*, *Alva v. Kaiser*, No. 25-cv-06676, 2025 WL 2294917, at *3 (N.D. Cal. Aug. 7, 2025) (granting temporary restraining order); *Pinchi v. Noem*, No. 25-cv-05632, 2025 WL 1853763, at *4 (N.D. Cal. July 4, 2025) (granting temporary restraining order requiring release of asylum seeker and a pre-detention bond hearing before re-arrest); *Singh*, 2025 WL 1918679, at *10 (granting preliminary injunction); *Doe v. Becerra*, No. 25-cv-647-DJC-DMC, 2025 WL 691664, at *8 (E.D. Cal. Mar. 3, 2025) (granting temporary restraining order); *see also Diaz*, 2025 WL 1676854 (granting temporary restraining order requiring pre-detention hearing before re-detention of noncitizen out of custody five years); *Garcia v. Bondi*, No. 25-cv-5070, 2025 WL 1676855, at *3 (N.D. Cal. June 14, 2025) (granting temporary restraining order requiring pre-detention hearing before re-detention of noncitizen out of custody six years ); *Enamorado v. Kaiser*, No. 25-cv-4072-NW, 2025 WL 1382859, at *3 (N.D. Cal. May 12, 2025).

Finally, the Court exercises its discretion under Rule 65(c) to dispense with the filing of bond. "[T]here is no realistic likelihood of harm to the [Respondents] from enjoining [their] conduct." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003). Therefore, no security is needed to ensure that Respondents will be reimbursed for "costs and damages sustained by . . . hav[ing] been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c).

### III.    CONCLUSION AND ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that Petitioner's Motion for Temporary Restraining Order is GRANTED to preserve the status quo pending further briefing and a hearing on this matter. Respondents are ORDERED to immediately release Petitioner from Respondents' custody and ENJOINED AND RESTRAINED from re-detaining Petitioner without notice and a pre-deprivation hearing before a neutral decisionmaker, and from removing Petitioner from the United States. This Order shall remain in effect until November 12, 2025, at 6:00 p.m. Respondents SHALL provide a status report confirming Petitioner's release by no later than 10:00 a.m. on October 30, 2025. Respondents are ORDERED TO SHOW CAUSE in a hearing via Zoom at 10:30 a.m. on Wednesday, November 12, 2025, why a preliminary injunction should not issue. The Court ORDERS counsel for both sides to meet and confer regarding a briefing

schedule on Petitioner's motion for preliminary injunction, with a reply brief due by no later than noon on Friday, November 7, 2025. The parties' joint or separate proposed briefing schedules shall be filed on the docket by no later than 10:00 a.m. on October 31, 2025. The parties may stipulate to an extended briefing schedule and later hearing date, provided that the parties also stipulate that the temporary restraining order will continue in effect until that hearing date.

**IT IS SO ORDERED.**

Dated: 7:00 p.m. on October 29, 2025

**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**