1

2

3

4                                    UNITED STATES DISTRICT COURT

5                                 NORTHERN DISTRICT OF CALIFORNIA

6

7      LESBIA JESENIA LEIVA FLORES,               Case No. 25-cv-09302-AMO

              Plaintiff,
8
                                                 **ORDER GRANTING**
9               v.                               **PRELIMINARY INJUNCTION**

10     SERGIO ALBARRAN, et al.,

              Defendants.
11

12

13            Petitioner Lesbia Jesenia Leiva Flores is an asylum seeker who was detained at an

14     Immigration and Customs Enforcement ("ICE") check-in on October 28, 2025.  Leiva Flores filed

15     a petition for writ of habeas corpus and a motion for a temporary restraining order ("TRO")

16     seeking release from detention.  *See* Dkt. Nos. 1, 3.  On October 29, 2025, this Court issued a

17     TRO requiring Sergio Albarran, Todd Lyons, Kristi Noem, and Pamela Bondi ("Respondents") to

18     release Leiva Flores and enjoining them from re-detaining her without notice and a pre-arrest

19     hearing before a neutral decisionmaker, and ordered Respondents to show cause why a

20     preliminary injunction should not issue.  *See* Dkt. No. 4 at 3-4.  On November 7, 2025,

21     Respondents filed their response, Dkt. No. 10, and Leiva Flores's reply followed on November 12,

22     2025, Dkt. No. 11.  Having carefully considered the parties' papers and the arguments made

23     therein and at the hearing, as well as the relevant legal authority, the Court hereby **GRANTS**

24     Leiva Flores's motion for preliminary injunction for the following reasons.

25            I.      **BACKGROUND**

26                   **A.  Factual Background**

27            Leiva Flores is an asylum seeker from Nicaragua.  Pet. for Writ of Habeas Corpus ("Pet.")

28     ¶ 1, Dkt. No. 1.  She entered the United States in July 2021 and U.S. Border Patrol detained her.

United States District Court
Northern District of California

1    Deportation Officer Decl., Dkt. No. 10-1. A day after her detention, a Border Patrol Agent began

2    to fill out a Form I-860 Notice and Order of Expedited Removal ("I-860") for Leiva Flores. *See*

3    Dkt. No. 10-1 at 9. The I-860 stated that Leiva Flores was subject to expedited removal under 8

4    U.S.C. § 1225(b)(1) because she was not a citizen of the United States, she was a native and

5    citizen of Nicaragua, and because she was not in possession of a valid entry document. *Id.* The I-

6    860 was never completed. *Id.* The "Order of Removal" section of the I-860 is blank, indicating

7    that no order was ever issued. *Id.* The I-860 also lacks a signed certificate of service, indicating

8    that it was never served on Leiva Flores as required by 8 C.F.R. § 235.3(b)(2). While detained,

9    Leiva Flores expressed that she had a fear of returning to her country. Dkt. No. 10 at 14. Leiva

10   Flores was never ordered removed pursuant to Section 1225(b)(1).

11          On August 8, 2021, Leiva Flores was released from custody pursuant to *Fraihat v. ICE*,

12   445 F. Supp. 3d 709 (C.D. Cal. Apr. 20, 2020), which required the temporary release of

13   noncitizens with certain risk factors related to the Covid-19 pandemic. Dkt No. 10-1 at 18-19. On

14   September 14, 2021, Leiva Flores attended a scheduled ICE check-in and was issued a Form I-

15   220, which stated that she was being released on her own recognizance ("OREC") "[i]n

16   accordance with section 236 of the Immigration and Nationality Act [8 U.S.C. § 1226]." Dkt. No.

17   3-2 at 7. Respondents contend that this document was issued erroneously to Leiva Flores. Dkt.

18   No. 10 at 11. Since her release, Leiva Flores has attended every scheduled ICE check-in. Dkt.

19   No. 11 at 16. She has no criminal record anywhere in the world. *Id.*

20          In January 2022, Leiva Flores affirmatively applied for asylum before the United States

21   Citizenship and Immigration Service ("USCIS") Asylum Office. *Id.* at 11; Dkt. No. 11 at 7. On

22   June 12, 2025, Leiva Flores received a "Notice of Dismissal of Form I-589" indicating that USCIS

23   was dismissing her asylum application because she had been placed in expedited removal

24   proceedings. Dkt. No. 10 at 7. On October 28, 2025, Leiva Flores reported for a scheduled ICE

25   check-in and was detained. *Id.* ¶ 3.

26          Leiva Flores filed this habeas petition and moved for a TRO on October 29, 2025. *See*

27   Dkt. Nos. 1, 3. The Court granted Leiva Flores's request for a TRO as modified the same day and

28   ordered Leiva Flores's release. *See* Dkt. No. 4. Respondents confirmed that Leiva Flores was

United States District Court
Northern District of California

United States District Court
Northern District of California

1    released by 7:00 a.m. on October 30, 2025.  *See* Dkt. No. 7.

2           **B.  Statutory Framework**

3       The statutory scheme governing immigration detention and removal is complex.  Two

4    removal statutes are at issue in this case.  Leiva Flores and Respondents disagree to which removal

5    statute Leiva Flores is subject.  The Court summarizes both removal statutes below before

6    engaging the parties' arguments.

7          **i.  8 U.S.C. § 1226 (Full Removal Proceedings and Discretionary**

8            **Detention)**

9       Title 8 U.S.C. § 1226 governs removal proceedings for noncitizens who were lawfully

10   admitted into the United States but are deportable and subject to removal proceedings.  Section

11   1226(a) provides that noncitizens "may be arrested and detained" while their removal proceedings

12   are pending or the government may release the noncitizen on "conditional parole."  8 U.S.C. §

13   1226(a)(2); *see also Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 108 (2020).  An ICE

14   officer makes an initial determination when a person is apprehended under Section 1226(a) as to

15   whether the noncitizen should be taken into custody.  8 C.F.R. § 236.1(c)(8).  Noncitizens are

16   released if they "demonstrate to the satisfaction of the [ICE] officer that such release would not

17   pose a danger to property or persons, and that the alien is likely to appear for any future

18   proceeding."  *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022) (citing 8 C.F.R. §

19   236.1(c)(8)).

20      If a noncitizen is detained, they are entitled to a bond hearing before an Immigration Judge.

21   *Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018) (citing 8 CFR § 236.1(d)(1)).  The Immigration

22   Judge will order the noncitizen's release if the noncitizen "demonstrates by the preponderance of

23   the evidence that he or she is not 'a threat to national security, a danger to the community at large,

24   likely to abscond, or otherwise a poor bail risk[.]' "  *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-

25   EMC (EMC), 2025 WL 2637503, at *1 (N.D. Cal. Sept. 12, 2025) (quoting *Rodriguez Diaz*, 53

26   F.4th at 1197).  Under Section 1226(b), "the DHS has authority to revoke a noncitizen's bond or

27   parole 'at any time,' even if that individual has previously been released."  *Ortega v. Bonnar*, 415

28   F. Supp. 3d 963, 968 (N.D. Cal. 2019).  But if it was previously determined that a noncitizen

United States District Court
Northern District of California

1     should be released on bond, "DHS may not re-arrest that noncitizen absent a change in

2     circumstance." *Salcedo Aceros*, 2025 WL 2637503, at \*1 (citing *Panosyan v. Mayorkas*, 854 F.

3     App'x 787, 788 (9th Cir. 2021)) (noting changed circumstance standard applies whether an

4     immigration judge or ICE officer had previously released a noncitizen on bond).

5                          **ii.   8 U.S.C. § 1225 (Expedited Removal and Mandatory Detention)**

6                 Title 8 U.S.C. § 1225 lays out the procedures by which the government may mandatorily

7     detain "an applicant for admission", who 8 U.S.C. § 1225(a)(1) defines as a noncitizen "present in

8     the United States who has not been admitted or who arrives in the United States."  Applicants for

9     admission "fall into one of two categories, those covered by § 1225(b)(1) and those covered by

10    § 1225(b)(2)," both of which are subject to mandatory detention.  *Jennings*, 583 U.S. at 287

11    ("[R]ead most naturally, §§ 1225(b)(1) and (b)(2) mandate detention for applicants for admission

12    until certain proceedings have concluded.").  Neither Leiva Flores nor Respondents argue that

13    Leiva Flores is subject to Section 1225(b)(2), so the Court does not engage that provision further.

14                Section 1225(b)(1) applies to "arriving" noncitizens "initially determined to be

15    inadmissible due to fraud, misrepresentation, or lack of valid documentation."  8 U.S.C. §§

16    1225(b)(1)(A)(i), (iii).  If a noncitizen "indicates either an intention to apply for asylum" or "a fear

17    of persecution," Section 1225(b)(1) provides that an immigration officer "shall refer the[m] for an

18    interview by an asylum officer."  §§ 1225(b)(1)(A)(i)–(ii).  Detention of the noncitizen is

19    "mandatory" "pending a final determination of credible fear of persecution and if found not to

20    have such a fear, until removed."  § 1225(b)(1)(B)(iii)(IV).

21    **II.     DISCUSSION**

22                Leiva Flores seeks a preliminary injunction to prevent Respondents from re-detaining her

23    absent notice and a pre-deprivation hearing before an Immigration Judge to evaluate whether her

24    re-detention is warranted.

25          **A.  Legal Standard**

26                To obtain preliminary injunctive relief, the moving party must show: (1) a likelihood of

27    success on the merits, (2) a likelihood of irreparable harm to the moving party in the absence of

28    preliminary relief, (3) the balance of equities tips in the favor of the moving party, and (4) an

4

<div style="text-align: center; writing-mode: vertical-rl;">United States District Court<br>Northern District of California</div>

1   injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20

2   (2008). Where the government is a party, courts merge the analysis of the final two *Winter*

3   factors, the balance of equities and the public interest. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d

4   1073, 1092 (9th Cir. 2014) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)). Courts "explore the

5   relative harms to applicant and respondent, as well as the interests of the public at large." *Barnes*

6   *v. E-Sys., Inc. Grp. Hosp. Med. & Surgical Ins. Plan*, 501 U.S. 1301, 1305 (1991) (internal

7   quotation marks and citation omitted). The *Winter* factors may be evaluated on a sliding scale,

8   such that preliminary relief may be issued when the moving party demonstrates "that serious

9   questions going to the merits were raised and the balance of hardships tips sharply in the

10  plaintiff's favor." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011)

11  (citation omitted). To grant preliminary injunctive relief, a court must find that "a certain

12  threshold showing [has been] made on each factor." *Leiva-Perez v. Holder*, 640 F.3d 962, 966

13  (9th Cir. 2011) (per curiam).

### B. Likelihood of Success on the Merits

15      Leiva Flores asserts that her re-detention violates her substantive and procedural rights to

16  due process. Under the Due Process Clause of the Fifth Amendment to the United States

17  Constitution, no person shall be "deprived of life, liberty, or property, without due process of

18  law." U.S. Const. amend. V. "The Fifth Amendment guarantees due process in deportation

19  proceedings." *Torres-Aguilar v. I.N.S.*, 246 F.3d 1267, 1270 (9th Cir. 2001) (*citing Campos-*

20  *Sanchez v. I.N.S.*, 164 F.3d 448, 450 (9th Cir. 1999), superseded by statute on other grounds as

21  stated in *Arizmendi-Medina v. Garland*, 69 F.4th 1043, 1053 (9th Cir. 2023)).

22      As an initial matter, because it is disputed by the parties, the Court must resolve whether

23  Leiva Flores is subject to detention under Section 1225 or 1226. According to Respondents, Leiva

24  Flores "lack[s] a liberty interest in *additional* procedures including a custody redetermination or

25  pre-detention bond hearing . . . [because her] conditional parole status does not provide [her] with

26  additional rights above and beyond the specific process already provided by Congress in § 1225."

27  *Id.* at 18 (emphasis in original). The Court finds that Leiva Flores was paroled under Section 1226

28  and therefore is not subject to mandatory detention. While the incomplete I-860 that Respondents

<div style="text-align: center;">5</div>

1    point to may establish that a border patrol agent at one time intended to put Leiva Flores into

2    expedited removal proceedings pursuant to Section 1225, that form was not completed, and

3    decidedly did not actually put her into expedited removal proceedings.  The Order of Removal on

4    Leiva Flores's I-860 is blank and unsigned.  *See* Dkt. No. 10-1 at 9.  8 C.F.R. § 235.3(b)(2)

5    requires that an officer seek supervisory concurrence before issuing an expedited removal order on

6    a Form I-860.  8 C.F.R. § 235.3(b)(7) adds that "[a]ny removal order entered by an examining

7    immigration officer pursuant to section 235(b)(1) of the Act must be reviewed and approved by

8    the appropriate supervisor before the order is considered final."  Leiva Flores's I-860 lacks

9    signatures of both the immigration officer who allegedly ordered her removed and any concurring

10   supervisor.  *See* Dkt. No. 10-1 at 9.  Thus, Respondents have provided no evidence that an

11   expedited removal order pursuant to Section 1225 was ever issued against Leiva Flores.

12          By contrast, Leiva Flores provides affirmative evidence that she was placed in removal

13   proceedings pursuant to Section 1226(a).  ICE issued Leiva Flores a Form I-220 expressly stating

14   that she was being released on her own recognizance "[i]n accordance with section 236 of the

15   Immigration and Nationality Act [8 U.S.C. § 1226]."  Dkt. No. 3-2 at 7.  A noncitizen released on

16   an "Order of Release on Recognizance" necessarily must have been detained and released under

17   Section 1226.  *See Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1115-16 (9th Cir. 2007).

18   Respondents argue this document was issued erroneously because (1) this document is issued to

19   noncitizens in Section 1226 removal proceedings, but Leiva Flores was in Section 1225 removal

20   proceedings, and (2) Leiva Flores was already paroled pursuant to *Fraihat v. ICE.*  Dkt. No. 10 at

21   11.  These arguments are unpersuasive.  As discussed *supra*, Leiva Flores was never actually put

22   into Section 1225 removal proceedings because the "Order of Removal" section of the I-860 was

23   left blank.  Additionally, OREC and temporary parole pursuant to *Fraihat* are not mutually

24   exclusive.  Indeed, parole pursuant to *Fraihat* and parole pursuant to OREC serve two different

25   purposes.  The former was a temporary, one-year release given Leiva Flores's medical conditions

26   during the global pandemic, and the latter is a more permanent finding that Leiva Flores did not

27   represent a flight risk or danger to the community.

28          For these reasons, the Court finds that Leiva Flores was originally placed into Section 1226

United States District Court
Northern District of California

6

1 removal proceedings.  To the extent Respondents argue that Leiva Flores is subject to removal

2 under Section 1225 now, even if she was not initially put into Section 1225 removal proceedings,

3 the Court rejects this argument.  The Court is persuaded by the many district courts that have

4 found Section 1225 inapplicable to noncitizens who were conditionally released in the past under

5 Section 1226.  *See, e.g.*, *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC, 2025 WL 2637503

6 (N.D. Cal. Sept. 12, 2025); *Hernandez Nieves v. Kaiser*, No. 25-CV-06921-LB, 2025 WL

7 2533110 (N.D. Cal. Sept. 3, 2025); *Jimenez Garcia v. Kaiser*, No. 4:25-cv-06916-YGR (N.D. Cal.

8 Aug. 29, 2025); *Ramirez Clavijo v. Kaiser*, No. 25-CV-06248-BLF, 2025 WL 2419263 (N.D. Cal.

9 Aug. 21, 2025).   Respondents rely on a recent Board of Immigration Appeals ("BIA") decision,

10 *In re Yajure Hurtado*, 29 I & N. Dec. 216 (BIA 2025), for the proposition that noncitizens who

11 have lived in the United States for years can still be considered "applicants for admission" subject

12 to mandatory detention under Section 1225.  Dkt. No. 10 at 12-13.  The Court finds that *Yajure*

13 *Hurtado* "merit[s] little deference due to its inconsistency with earlier BIA decisions" and because

14 "its reasoning is [] at odds with the text of sections 1225 and 1226."  *Valencia Zapata v. Kaiser*,

15 No. 25-CV-07492-RFL, 2025 WL 2741654, at *10 (N.D. Cal. Sept. 26, 2025).  Accordingly,

16 Respondents' argument that Leiva Flores is subject to mandatory detention under Section 1225

17 and has no interest in "additional process" must fail.

18    **1.  Procedural Due Process**

19    The Court next decides what procedural process is due, and considers well-trodden factors

20 set forth by the Supreme Court: (1) "the private interest that will be affected by the official

21 action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and

22 the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the

23 Government's interest, including the function involved and the fiscal and administrative burdens

24 that the additional or substitute procedural requirement would entail."  *Mathews v. Eldridge*, 424

25 U.S. 319, 335 (1976).  The Ninth Circuit has "assume[d] without deciding" that *Mathews* applies

26 in the immigration detention context.  *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206-8 (9th

27 Cir. 2022) (applying *Mathews* to § 1226(a) and explaining "it remains a flexible test").   And

28 many district courts in this Circuit regularly apply *Mathews* in due process challenges to removal

United States District Court
Northern District of California

United States District Court
Northern District of California

1   proceedings. *See Pinchi v. Noem*, No. 5:25-CV-05632-PCP, 2025 WL 2084921, at \*3 n.2 (N.D.

2   Cal. July24, 2025) (collecting cases). The Court therefore joins the many district courts in this

3   Circuit that have applied *Mathews* in this context. *See E.A. T.-B. v. Wamsley*, No. C25-1192-

4   KKE, 2025 WL 2402130, at \*3 n.1 (W.D. Wash. Aug. 19, 2025) (collecting cases). The Court

5   considers each factor in turn.

### i.  Private Interest

7   Leiva Flores has a substantial private interest in remaining out of custody. If detained,

8   Leiva Flores would be unable to continue working, remaining in her home, and building

9   connections in her community. Leiva Flores holds an employment authorization document and is

10  gainfully employed as a cleaner at the San Francisco International Airport. Dkt. No. 3-2 ¶ 12;

11  Dkt. No. 3-1 at 11. The first *Matthews* factor therefore weighs in Leiva Flores's favor. *See*

12  *Pinchi*, 2025 WL 2084921, at \*4 (finding petitioner had a substantial interest "in remaining in her

13  home, continuing her employment, providing for her family, obtaining necessary medical care,

14  maintaining her relationships in the community, and continuing to attend her church."); *see also*

15  *Castellon v. Kaiser*, No. 1:25-CV-00968 JLT EPG, 2025 WL 2373425, at \*9 (E.D. Cal. Aug. 14,

16  2025) (finding petitioner "has a substantial private interest in being out of custody, which would

17  allow her to continue" working, attending community college, building connections in the

18  community, and obtaining necessary medical care).

### ii.  Risk of Erroneous Deprivation

20  Second, there is a risk Respondents will erroneously deprive Leiva Flores of her liberty

21  interest if the Government does not provide her with a pre-detention hearing. Where an individual

22  has not received a bond or redetermination hearing, "the risk of an erroneous deprivation [of

23  liberty] is high." *Singh v. Andrews*, No. 1:25-CV-00801, 2025 WL 1918679, at \*7 (E.D. Cal. July

24  11, 2025). In *Singh*, the court noted that,

> Petitioner has no criminal history and . . . has attended every check-in and court hearing . . . Nonetheless, ICE agents arrested [him] without a warrant as he exited a courtroom following his regularly scheduled immigration hearing. Petitioner has not since been provided any procedural safeguards to determine whether his detention is justified.

8

United States District Court
Northern District of California

1         Such is the case here.  Leiva Flores has no criminal history anywhere in the world and has

2  consistently attended her ICE check-ins, which occur once or twice a year.  Dkt. No. 11 at 16.  For

3  this reason, "the probable value of additional procedural safeguards . . . is high."  *Id.* (citing *A.E. v.*

4  *Andrews*, No. 1:25-cv-00107-KES-SKO, 2025 WL 1424382, at \*5 (E.D. Cal. May 16, 2025)).  The

5  second *Mathews* factor therefore weighs in Leiva Flores's favor.

6        **iii.   Burden on Respondents Versus Petitioner's Interest**

7         Finally, any countervailing government interest here is minimal.  Respondents have

8  identified no legitimate interest that would support detaining Leiva Flores without a pre-detention

9  hearing.  *See Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) (finding the third

10  factor favored petitioner, noting the government "has the power to take steps toward" re-arresting

11  petitioner, but "its interest in doing so without a hearing is low").  Neither have Respondents

12  asserted that the cost of providing a hearing would impose a financial or administrative burden.

13  "In immigration court, custody hearings are routine and impose a 'minimal' cost."  *Singh*, 2025

14  WL 1918679, at \*8 (citing *Doe v. Becerra*, No. 2:25-cv-00647-DJC-DMC, 2025 WL 691664, at

15  \*2 (E.D. Cal. Mar. 3, 2025)); *see also Pinchi*, 2025 WL 2084921, at \*6 ("[I]t is likely that the cost

16  to the government of detaining [petitioner] pending any bond hearing would significantly exceed

17  the cost of providing her with a predetention hearing.").

18         In conclusion, the *Mathews* factors weigh in favor of Leiva Flores, and she has therefore

19  shown a likelihood of success on the merits of her claim that she is entitled to a hearing before a

20  neutral decisionmaker prior to any detention.

21        **2.  Substantive Due Process**

22         Even if Leiva Flores did not show a likelihood of success on her procedural due process

23  claim, she has demonstrated a serious question going to the merits of her substantive due process

24  claim.[1]  Substantive due process requires that all forms of civil detention, including immigration

25  detention, bear a "reasonable relation" to a non-punitive purpose.  *See Jackson v. Indiana*, 406

26

27    ─────────────

28  [1] Because, as discussed *infra*, Leiva Flores has established that the balance of hardships tips
sharply in her favor, a preliminary injunction is warranted when she establishes a serious question
as to the merits of her Due Process Claims.  *See All. for the Wild Rockies*, 865 F.3d at 1131-1132.

1    U.S. 715, 738 (1972).  The Supreme Court has recognized only two permissible non-punitive

2    purposes for immigration detention: ensuring a noncitizen's appearance at immigration

3    proceedings and preventing danger to the community.  *Zadvydas v. Davis*, 533 U.S. 678, 690-92

4    (2001).  Leiva Flores was released on her own recognizance after an ICE agent found that she was

5    neither a flight risk nor a danger to the community.  Dkt. No. 3-2 at 7; Dkt. No. 11 at 8, 13.

6    Additionally, Leiva Flores has no criminal record and has attended every scheduled ICE check-in.

7    Dkt. No. 11 at 16.  Respondents have not argued that Leiva Flores's re-detention resulted from

8    changed circumstances that show she is a flight risk or a danger to the community.  Leiva Flores

9    has therefore demonstrated at least a serious question as to whether her re-detention would violate

10   her substantive due process rights by failing to serve a non-punitive purpose.

**C. Irreparable Harm**

12   The Court next considers the second *Winter* factor and finds that Leiva Flores would likely

13   suffer immediate and irreparable harm absent injunctive relief.  Specifically, she would face "the

14   risk of immediate re-detention by ICE, likely in violation of her constitutional rights and with

15   potentially devastating consequences for her economic livelihood . . . and her health."  *Pinchi*,

16   2025 WL 2084921, at *6.  This constitutes immediate and irreparable harm.  "[D]eprivation of

17   constitutional rights 'unquestionably constitutes irreparable injury,'" *Hernandez*, 872 F.3d at 994-

18   95 (citing *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)), and "most courts hold that no

19   further showing of irreparable injury is necessary," *Warsoldier v. Woodford*, 418 F.3d 989, 1001-

20   02 (9th Cir. 2005).

**D. Balance of Equities and Public Interest**

22   Because the party opposing the motion is the Government, the final two *Winter* factors

23   merge.  *Nken*, 556 U.S. at 435.  Here, these factors weigh heavily in favor of granting a

24   preliminary injunction.  There is a strong public interest in "upholding procedural protections

25   against unlawful detention" as well as "in the efficient allocation of the government's fiscal

26   resources," *Vargas v. Jennings*, No. 20-CV-5785-PJH, 2020 WL 5074312, at *4 (N.D. Cal. Aug.

27   23, 2020) (citing *Hernandez v. Sessions*, 872 F.3d 976, 996 (9th Cir. 2017) (internal quotations

28   omitted)), so this factor supports preliminary injunctive relief.  And while the potential harm to

United States District Court
Northern District of California

10

United States District Court
Northern District of California

1    Leiva Flores is significant, the "potential harm to the government is minimal." *Pinchi*, 2025 WL

2    2084921, at *7.  At most, the Government's injury would be a short delay in detaining Leiva

3    Flores, and despite its contention that it has a "compelling interest in the steady enforcement of its

4    immigration laws," Dkt. No. 10 at 19, it "cannot reasonably assert that it is harmed in any legally

5    cognizable sense by being enjoined from constitutional violations," *Zepeda v. U.S. Immigr. & Nat.*

6    *Serv.*, 753 F.2d 719, 727 (9th Cir. 1983).  The balance of hardships therefore tips sharply in favor

7    of Leiva Flores.  Accordingly, the final two *Winter* factors weigh in favor of a preliminary

8    injunction.

9    ## III.    CONCLUSION

10   For the foregoing reasons, the Court hereby **GRANTS** Leiva Flores's Motion for a

11   Preliminary Injunction.  Respondents are **ENJOINED AND RESTRAINED** from re-detaining

12   Leiva Flores without notice and a pre-deprivation hearing before an Immigration Judge to evaluate

13   whether her re-detention is warranted based on changed circumstances establishing Leiva Flores is

14   a flight risk or a danger to the community.  No security bond is required, as the government

15   provides no evidence of costs it will incur due to Leiva Flores's release.  By December 3, 2025,

16   the parties **SHALL FILE** a joint statement with a proposed case management schedule.

17   **IT IS SO ORDERED.**

18   Dated: November 19, 2025

19

20   **ARACELI MARTÍNEZ-OLGUÍN**
     **United States District Judge**

21

22

23

24

25

26

27

28

11